**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| REGINALD SYDNOR, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| OFFICE OF PERSONNEL | : | |
| MANAGEMENT, | : | |
| Defendant | : | No. 06-0014 |

Gene E.K. Pratter          Memorandum and Order          January 22, 2007

The Office of Personnel Management (or "OPM") has filed a Motion to Dismiss or, in the

alternative, for Summary Judgment.  For the reasons stated below, OPM's Motion to Dismiss

will be granted in part and denied in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Pro se plaintiff Reginald L. Sydnor is an American citizen, an African-American, and an

honorably discharged United States veteran with over 17 years of U.S. military and competitive

federal service.  Compl. ¶¶ 3–4.  OPM is the federal agency of the United States responsible for

the overall management of federal employees.  Compl. ¶ 6.  Mr. Sydnor was injured while

employed by the Equal Employment Opportunity Commission and was placed on federal

disability retirement from August 5, 1994 until March 2, 1997.  Compl. ¶ 7.  On March 3, 1997,

Mr. Sydnor relinquished his disability retirement benefits and began a trial employment period as

an Administrative Law Judge (or "ALJ") for the Social Security Administration (or "SSA").

Compl. ¶ 8.  Mr. Sydnor's employment as an ALJ was subject to a suitability investigation

conducted by OPM.

On January 13, 1998, after completing a background investigation of Mr. Sydnor, OPM

determined that he was unsuitable for federal employment and debarred him from federal service for three years, or until January 13, 2001.  Compl. ¶¶ 9, 10, 18.  On February 11, 1998, Mr. Sydnor appealed OPM's unsuitability and disbarment determinations to the Merit Systems Protection Board ("MSPB").  Compl. ¶ 11.  Because Mr. Sydnor exercised his right to appeal, on February 12, 1998, the SSA placed Mr. Sydnor on indefinite suspension without pay, effective as of January 13, 1998. Compl. ¶ 12.[1]  On June 11, 1998, the MSPB issued its initial decision denying Mr. Sydnor's appeal of OPM's unsuitability determination and decision to debar Mr. Sydnor from federal service.  See Def. Ex. D. Mr. Sydnor appealed and on December 30, 1998, the MSPB issued its final decision denying his appeal.  Compl. ¶ 16.

On February 1, 1999, after MSPB denied Mr. Sydnor's appeal, the SSA processed a Notification of Personnel Action (SF-50), which officially "removed" Mr. Sydnor from service as a federal employee for recordkeeping purposes.  See Def. Ex. F.  The SF-50 listed the effective

---

[1]  The Government noted in its Reply Brief that the regulations in effect when OPM rendered its initial decision in January 1998 through the date MSPB denied Mr. Sydnor's appeal in December 1998, permitted SSA to suspend Mr. Sydnor pending adjudication of his appeal. Def. Reply Br. 6.  This regulation, which was superceded and repealed in 2001, stated that "[w]hen an employee or appointee whom OPM has determined to be unsuitable files an appeal to the [MSPB], the employing agency may . . . suspend the employee or appointee on the day following the date on which the removal was to have been effective pending adjudication of the appeal . . . ."  5 C.F.R. § 731.501(c) (1994).  In this case, SSA indefinitely suspended Mr. Sydnor, effective February 12, 1998, following OPM's initial negative suitability determination and its decision to debar Mr. Sydnor for three years.  At that time, SSA completed a form SF-50 and stated that its basis for suspending Mr. Sydnor was OPM's suitability determination and debarment decision.  See Def. Ex. B.  When Mr. Sydnor's appeal process was completed (by virtue of MSPB's final decision affirming OPM's decision that Mr. Sydnor was unsuitable), SSA completed another form SF-50, formally "removing" Mr. Sydnor from its rolls.  See Def. Ex. F.

Mr. Sydnor also appealed the SSA's decision to indefinitely suspend him.  Compl. ¶ 13.  The MSPB dismissed this appeal for lack of jurisdiction, holding that the SSA's decision to place an employee on indefinite suspension is not appealable.  See Def. Ex. B.

date of Mr. Sydnor's removal from federal service as December 30, 1998.  See Def. Ex. F.

Several times during the appeal process and following his removal from federal service, Mr. Sydnor sought to have his federal disability retirement restored.  Compl. ¶¶ 13, 19.  On September 16, 2003, OPM issued an initial decision that Mr. Sydnor's federal disability retirement would not be reinstated.  Compl. ¶ 20.  According to Mr. Sydnor, because his SF-50 stated that he was on OPM's roster of federal employees for more than one year, he was disqualified from receiving disability retirement.  Compl. ¶ 21.  Mr. Sydnor appealed that decision, Compl. ¶ 22, and on July 13, 2004, MSPB dismissed his appeal without prejudice pending a decision by SSA[2] whether to change the date of Mr. Sydnor's separation from federal service on his SF-50 from December 30, 1998 to January 13, 1998.  Compl. ¶ 24.  On September 1, 2003, OPM sent Mr. Sydnor a letter denying his request to amend his SF-50.  Def. Ex. O.  Mr. Sydnor appealed OPM's decision, and on October 18, 2004, OPM denied his appeal.  Compl. ¶ 26.  OPM informed Mr. Sydnor that he could seek review of OPM's decision by filing a claim against OPM in district court, pursuant to the Privacy Act, 5 U.S.C. § 552a(g)(1).  Compl. ¶ 26; Def. Ex. P.  On January 9, 2006, Mr. Sydnor filed his Complaint (Docket No. 3) in this case.

Mr. Sydnor's Complaint contains four counts,[3] each of which is general in nature and

---

[2] Mr. Sydnor initially requested SSA to amend his SF-50, but SSA informed Mr. Sydnor that because he was no longer an employee of SSA, he must direct his amendment requests to OPM.  Compl. ¶ 25.  Mr. Sydnor subsequently requested that OPM amend his SF-50.

[3] Mr. Sydnor's four counts are summarized as follows:

1.    OPM's policy and practice to debar and instruct the employing agency to remove Mr. Sydnor without any instructions to SSA as to specific terms, conditions and duration of the removal discipline, arbitrarily and indefinitely disciplines Mr. Sydnor without the statutory administrative review, approval or appeal the employing agency would afford other similarly situated employed ALJs.

broadly stated, and none of which cites a statutory provision or a regulation that Mr. Sydnor

alleges OPM has violated.[4]

However, in his Memorandum in Opposition to the Government's Motion to Dismiss,

Mr. Sydnor recasts the claims set forth in his Complaint as comprising two discrete issues.[5]  Pl.

Mem. Opp'n 2.  Mr. Sydnor characterizes the first issue as whether OPM violated its own

regulations by failing to make a suitability determination with respect to his reinstatement to

---

2. OPM's failure to instruct SSA and specify the terms, conditions and duration of Mr. Sydnor's agency removal has denied Mr. Sydnor's reinstatement for disability retirement solely because Mr. Sydnor exercised his administrative due process procedural right to appeal OPM's unsuitability and debarment determinations.

3. OPM's debarment policy and practice has the cause and effect to initiate excessive and disparate agency disciplinary actions against Mr. Sydnor, which is contrary to SSA's own established precedent for disciplining similarly situated employed ALJs.

4. Defendant's unsuitability and debarment policy and practice has the cause and effect to expel Mr. Sydnor from federal employment without any administrative remedy.

[4]  Mr. Sydnor's Complaint seeks the following five remedies:

1. For the Court to assume equitable jurisdiction over Mr. Sydnor's ongoing removal from federal employment;
2. For the Court to determine and order specific equitable terms, conditions and duration associated with Mr. Sydnor's ongoing disciplinary removal;
3. For the Court to order Mr. Sydnor suitable for federal employment;
4. For the Court to order OPM to reinstate Mr. Sydnor as an ALJ; and
5. For the Court to order any other equitable relief as it sees fit.

[5]  At oral argument on the Government's motion, the Court asked Mr. Sydnor, if he were to amend his complaint, which claims he would pursue how he would recharacterize those claims.  Mr. Sydnor responded that he would amend his complaint to specifically focus on the two issues that he highlighted in his Memorandum in Opposition and which are discussed herein. Oct. 27, 2006 Tr. 51:5–52:9.

4

federal employment after his debarment period expired in January 2001.  Id.  Mr. Sydnor

suggests that this claim arises under Section 702 of the Administrative Procedures Act ("APA"),

5 U.S.C. § 702.  Pl. Mem. Opp'n 5.

      Mr. Sydnor's second issue is whether the Court should direct OPM to correct Mr.

Sydnor's personnel records to change the official date of his "removal" from federal employment

from December 30, 1998, which is the date his final appeal to the MSPB was denied, to January

18, 1998, which is the date OPM initially determined that he was unsuitable for federal

employment and debarred him from federal government service.  This alleged claim arises under

the Privacy Act, 5 U.S.C. 552a(g)(1).  Mr. Sydnor contends that if his personnel records were

changed to reflect the earlier date, he would be eligible to receive federal disability retirement

benefits.[6]  Mr. Sydnor contends that under the later date, which Mr. Sydnor's personnel records

currently reflect, he is ineligible for federal disability retirement because his personnel records

reflect that he was employed by the federal government for a period of more than one year.

      On April 24, 2006, the Government filed a Motion to Dismiss, or in the alternative, for

Summary Judgment (Docket No. 9).  Mr. Sydnor filed a Memorandum in Opposition to that

motion (Docket No. 12) and supplementally submitted certain documents (Docket No. 13).  The

---

[6] The Government argues that Mr. Sydnor's two claims are contradictory because at once he is attempting to be reinstated into his previous ALJ position and also attempting to have his disability retirement reinstated.  Essentially, the Government notes that Mr. Sydnor cannot both be employed by the federal government and receive federal retirement benefits.  The Court does not view Mr. Sydnor's two claims as per se contradictory inasmuch as these claims can be viewed as alternative to one another, i.e., a successful result on his suitability claim would alleviate his need to prevail on his claim to amend his personnel records.  However, if Mr. Sydnor prevails on his suitability claim, it would not produce an inconsistent result if he were also successful on his amendment claim.  It stands to reason that if Mr. Sydnor believes his personnel records currently reflect an error, he may want to have them corrected, regardless of whether that correction would entitle him to receive retirement benefits.

Government filed a Reply Brief in support of its motion (Docket No. 14).  The Court heard oral argument on the Government's motion on October 27, 2006.[7]

At oral argument, the Court raised the question of whether the Government's motion could appropriately be determined as a motion to dismiss or a motion for summary judgment. The Government conceded that the issues presented could be decided on a motion to dismiss. Oct. 27, 2006 Tr. 13:11-12.  The Court agrees and will address the current motion as a motion to dismiss and not as a motion for summary judgment.  However, the Court's Memorandum does refer to certain documents that accompanied the respective motion papers submitted by the parties.  The Court reviewed the entire "record" presented by the parties to gain a fuller understanding of the factual background of this case and how the facts pertain to the legal issues presented, and to determine whether the issues presented were appropriate for summary judgment.  Because the Court will decide the current motion as a motion to dismiss, the Court did not rely on the "record" in making its decision.  Citations to the record, none of which implicate substantive law, are included to fill in factual gaps that are not complete by reference to the pleadings and motion papers themselves.

Because Mr. Sydnor represented to the Court that if he were to amend his Complaint he would focus only on the two "issues" that he clarified in his Memorandum in Opposition, the only counts in Mr. Sydnor's Complaint that address his claims under the Privacy Act and the

---

[7] During oral argument, the parties disputed which of two regulations should apply to evaluate whether OPM was required to determine Mr. Sydnor's suitability for reinstatement following the expiration of his debarment.  The Court permitted the parties to submit supplemental briefs on this issue.  Oct. 27, 2006 Tr. 60:17–61:7.  Both parties submitted supplemental letter briefs, which were not formally added to the docket in this case, that attempted to address this issue.

APA, respectively, are counts two and four.  Therefore, counts one and three of Mr. Sydnor's

Complaint will be dismissed as intended by Mr. Sydnor in his communications with the Court.

Further, the only remedies Mr. Sydnor seeks (that the Court has jurisdiction to order), are for the

Court to order OPM to (i) conduct a suitability determination and (ii) correct Mr. Sydnor's

personnel records to change the effective date of his "removal" from federal service.  Therefore,

remedies one through four of Mr. Sydnor's Complaint will also be dismissed.

## II.   JURISDICTION

The Court has federal question jurisdiction to determine Mr. Sydnor's claim under the

Administrative Procedures Act pursuant to 28 U.S.C. § 1331.[8]  The judicial review provision of

the APA provides that "a person suffering legal wrong because of an agency action, or adversely

affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to

judicial review thereof."  5 U.S.C. § 702.  It is well established that the APA does not afford an

implied grant of subject-matter jurisdiction permitting federal judicial review of agency action.

Your Home Visiting Nurse Servs. v. Shalala, 525 U.S. 449, 457-458 (1999); Califano v. Sanders,

430 U.S. 99, 107 (1977); Fairview Twp. v. EPA, 773 F.2d 517, 527 (3d Cir. 1985).

In Fairview Township, the Court of Appeals for the Third Circuit made clear that:

District court jurisdiction, if it exists, must be found in some other provision, such as the
federal question statute.  The federal question statute, 28 U.S.C. § 1331, provides the
district courts with jurisdiction over all civil actions coming under the laws of the United
States.  This case, presenting as it does the question whether EPA has applied the proper
affordability guidelines . . . clearly is an action arising under the federal laws which

_____

[8]  In Mr. Sydnor's Complaint, he asserts that jurisdiction is proper pursuant to 28 U.S.C. §
1331, among other grounds. Mr. Sydnor's Complaint asserted that jurisdiction is valid pursuant
to 28 U.S.C. §§ 1331, 1343(3) and (4), 42 U.S.C. §§ 1981 and 1983, 5 U.S.C. § 702, and 5
C.F.R. § 297.308.  In his Memorandum in Opposition, however, Mr. Sydnor conceded that 42
U.S.C. §§ 1981 and 1983 are "inapposite to this action." Pl.'s Mem. Opp'n 2.

> provide for the funding of sewerage projects, such as 33 U.S.C. § 1281 (general authorization for such finding), and under the regulations that provide for EPA review of grant applications, such as 40 C.F.R. § 35.1000 et seq. Validly issued administrative regulations may be treated as laws of the United States for purposes of 28 U.S.C. § 1331.

Fairview Twp., 773 F.2d at 527 (citations omitted).  Thus, for this Court to have jurisdiction over Mr. Sydnor's suitability claim, Mr. Sydnor must provide an independent source of subject-matter jurisdiction founded upon, for example, federal question jurisdiction under 28 U.S.C. § 1331. Mr. Sydnor argues that OPM violated 5 C.F.R. § 731.304 and § 930.207 by not conducting an investigation to determine his suitability for reinstatement to federal service.  See Pl.'s Mem. Opp'n 2;  Oct. 27, 2006 Tr. 37:7–25.  Therefore, federal jurisdiction exists because Mr. Sydnor is alleging violations of administrative regulations.

The Court has jurisdiction to determine Mr. Sydnor's claim under the Privacy Act pursuant to 5 U.S.C. 552a(g)(1)(D).

## III.   STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the non-moving plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

"Due to an understandable difference in legal sophistication, a complaint drafted by a pro se litigant must be held to a less exacting standard than a complaint drafted by trained counsel."

8

Lopez v. Brown, 2005 U.S. Dist. LEXIS 26715, at *6 (D.N.J. Nov. 4, 2005) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  Notwithstanding Mr. Sydnor's legal degree, his litigation drafting skills should not be equated with counsel undertaking independent representation of a client.  Therefore, the Court will grant this pro se plaintiff all possible latitude in construing the allegations he makes in his complaint.  See Murphy v. Dep't of Human Servs., 2007 U.S. Dist. LEXIS 716, at *5 (E.D. Pa. Jan. 5, 2007) (citing Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (stating that pro se complaints "however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers" and should be liberally construed).

IV.    DISCUSSION

     A.    *Mr. Sydnor's Claim under the Administrative Procedures Act*

Mr. Sydnor argues that the Office of Personnel Management violated its own regulations by failing to make a suitability determination with respect to his reinstatement to federal employment as an Administrative Law Judge after his disbarment period expired.  In effect, Mr. Sydnor asks the Court to order OPM to make a suitability determination.  See Oct. 27, 2006 Tr. 22:15–23.

     1.    Requirement of "Agency Action" Under the APA

The APA provides that "[a] person suffering legal wrong because of *agency action*, or adversely affected or aggrieved by *agency action* within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (emphasis added).  In order to state a claim under the APA, Plaintiff must challenge an "agency action," since it is only review "thereof" that the APA permits.  Where no other statute provides a private right of action, the "agency action"

9

challenged must be "*final* agency action."  5 U.S.C. § 704 (emphasis added); see id. ("Agency

action made reviewable by statute and final agency action for which there is no other adequate

remedy in a court are subject to judicial review."); Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871,

882 (1990) ("When, as here, review is sought not pursuant to specific authorization in the

substantive statute, but only under the general review provisions of the APA, the "agency action"

in question must be "final agency action."); see also Norton v. S. Utah Wilderness Alliance, 542

U.S. 55, 61-62 (2004) (citing 5 U.S.C. § 704; requiring that where no other statute provides a

private right of action, the "agency action" complained of must be "final" agency action).

        OPM argues that Mr. Sydnor's Complaint must be dismissed because he failed to plead,

or in any way describe, what "agency action" he is purporting to challenge.  Although Mr.

Sydnor does not state specifically which "agency action" he purports to challenge, it is clear from

an overall consideration of Mr. Sydnor's pleadings that his claim hinges upon OPM's alleged

"inaction."  Mr. Sydnor argues that OPM "violated its own regulations by failing to make a

suitability determination on his reinstatement to federal employment after his three-year

disbarment from federal employment had expired."  Pl.'s Mem. Opp'n 2.[9]

        The  definition of "agency action" can encompass an agency's failure to act.  The APA

defines "agency action" as including "the whole or a part of an agency rule, order, license,

sanction, relief, or the equivalent or denial thereof, *or failure to act*."  5 U.S.C. § 551(13)

(emphasis added).  While not every allegation that an agency "failed to act" is actionable under

the APA, the APA specifically vests a reviewing court with the authority to "compel agency

---

        [9] Plaintiff states clearly that he is not seeking to re-litigate (or, presumably, to challenge)
his debarment, suspension and removal from federal service.  Pl.'s Mem. Opp'n 1.

action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Supreme Court

has analyzed what agency "inaction" is actionable under the APA, explaining that a "failure to

act" is "properly understood as a failure to take an agency action – that is, a failure to take one of

the agency actions (including their equivalents) earlier defined in [5 U.S.C. § 551(13)]." Norton,

542 U.S. at 62. Further, the Supreme Court explained:

> A "failure to act" is not the same thing as a "denial." The latter is the agency's act of
> saying no to a request; the former is simply the omission of an action without formally
> rejecting a request – for example, the failure to promulgate a rule or take some decision
> by a statutory deadline. The important point is that a "failure to act" is properly
> understood to be limited, as are the other items in § 551(13), to a discrete action.

Id. at 63.

In addition, the Supreme Court advised that the only agency "action" that can be

compelled under the APA is action that is legally required. Id. In this regard, the Supreme Court

noted that this limitation appears in the authorization in 5 U.S.C. § 706(1) for courts to "compel

agency action unlawfully withheld." Id. The Supreme Court further noted that § 706(1) also

authorizes courts to "compel agency action . . . unreasonably delayed," noting that "a delay

cannot be unreasonable with respect to action that is not required." Id. at 64.

Combining these two related Supreme Court analyses leads to the conclusion that to

assert a valid claim of "agency inaction" under the APA, a plaintiff must assert "that an agency

failed to take a *discrete* agency action that it is *required to take*." Id. In this case, Mr. Sydnor

alleges that OPM failed to make a suitability determination in violation of its own regulations.

Pl.'s Mem. Opp'n 2. To succeed on this claim, Mr. Sydnor must eventually establish that (1)

OPM was or is required to make a suitability determination of an individual upon that

individual's request, (2) he has in fact requested OPM to conduct a suitability determination, (3)

OPM refused his request; and (4) OPM's refusal was a final agency action "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).[10]  The parties have cited numerous OPM regulations that pertain to this case, but failed to cite one regulation of particular relevance here. The Court will address the relevant regulations in turn.

a.    <u>5 C.F.R. § 930.207</u>

Mr. Sydnor first contends that OPM has refused to follow 5 C.F.R. § 930.207, which provides that:

> An agency may reinstate former administrative law judges who have served with absolute status under 5 U.S.C. § 3105 only after they have established their eligibility in accordance with all current examination requirements of OPM Examination Announcement No. 318.  Reinstatement is subject to investigation by, and the prior approval of, OPM

5 C.F.R. § 930.207.  This regulation encompasses three distinct responsibilities.  In the first instance, the onus is on the ALJ to establish his eligibility for reinstatement.  According to OPM, after a former ALJ becomes eligible, the obligation remains with the ALJ to apply for and to receive an offer of employment with an agency.  OPM contends, and Mr. Sydnor concedes, that an employing agency is not required to reinstate a former ALJ merely because he or she becomes eligible for reinstatement.  Only after a former ALJ becomes eligible and an agency informs OPM that it is interested in reinstating the former ALJ does OPM become involved in a former employee's reinstatement process.  The regulation provides that reinstatement of a former ALJ is

---

[10] The regulations promulgated pursuant to the APA provide certain enumerated actions that are actionable in this context: (1) cancellation of eligibility; (2) denial of appointment; (3) removal; (4) cancellation of reinstatement eligibility; (5) debarment.  5 C.F.R. § 731.203. However, as more fully described below, these regulations became effective after Mr. Sydnor's debarment period expired.  <u>See</u> <u>Suitability</u>, 66 Fed. Reg. 7863 (Jan. 26, 2001) (extending the effective date for implementation of new "Suitability" regulations until March 30, 2001).

"subject to investigation by, and the prior approval of, OPM"  5 C.F.R. § 930.207.  It is not clear

that "investigation by" or "approval of" OPM is mandatory for all ALJs seeking to be reinstated;

in other words, according to the regulations, OPM has the discretion whether to conduct an

"investigation" of an ALJ seeking to be reinstated and, depending on the results of the

investigation, to withhold its "approval" to reinstate the former ALJ.

> b.      5 C.F.R. § 731.304 – The "Old" Regulation

Mr. Sydnor also contends that OPM violated 5 C.F.R. § 731.304 (1991) (the "old"

regulation), which was in effect on the date Mr. Sydnor's debarment period expired but was

amended and superceded within a few weeks thereafter.  The regulation in effect when Mr.

Sydnor's debarment period expired stated that "[o]n expiration of a period of debarment, a

person who has been debarred may not be appointed to any position in the competitive service

until OPM has redetermined that person's suitability for appointment."  5 C.F.R. § 731.304

(1991).  Mr. Sydnor claims that OPM is bound by the "old" regulation because it was effective

on the date his debarment period concluded.[11]  He further contends that the "old" regulation

*required* OPM to conduct a suitability determination upon the expiration of his debarment period

---

[11] Mr. Sydnor partly bases his argument that OPM is bound to follow the "old" regulation on a January 13, 1998 letter that he received from OPM when OPM rendered its initial decision debarring Mr. Sydnor from federal service.  The letter stated that "[u]pon expiration of this disbarment period [on January 13, 2001], you may not be appointed to a competitive service position until the Office of Personnel Management (OPM) has made a redetermination of your suitability for employment."  Def. Ex. C at 1.  The Government notes that when this letter was issued, OPM quoted the relevant regulation in effect – the "old" regulation – which stated that a person who had been disbarred "may not be appointed to any position in the competitive service until OPM has redetermined that person's suitability for appointment."  Def. Reply Br. 4 (quoting 5 C.F.R. § 731.304 (1991)).  In urging the Court to order OPM to redetermine his suitability for employment, Mr. Sydnor seems to rely on the statement in this letter that *until* OPM acts by redetermining his suitability, in the eyes of any employing agency Mr. Sydnor is and always will be "unsuitable" for reinstatement.

on January 13, 2001.

        c.        <u>5 C.F.R. § 731.304 – The "New" Regulation</u>

On March 31, 2001, approximately one and a half months after Mr. Sydnor's debarment period expired, the following regulation became effective and replaced the "old" regulation: "[o]n expiration of a period of debarment, OPM or an agency may redetermine a person's suitability for appointment" in accordance with certain procedures.  5 C.F.R. § 731.204(b) (2001) (the "new" regulation).  In this action, OPM argues that the "new" regulation should be applied, which, it argues, clearly makes the decision whether to conduct an investigation to determine an applicant's suitability a matter of OPM's discretion.

During oral argument on the Government's motion, the parties disputed which regulation – the "old" or the "new" regulation – should apply to evaluate Mr. Sydnor's claims.  The Court permitted the parties to submit supplemental briefs on the issues of (i) which regulation should apply and (ii) whether the "old" regulation could be interpreted as obligating OPM to make a suitability determination at that moment.  October 27, 2006 Tr. 60:17–61:7.  Both parties submitted supplemental letter briefs in attempting to address these issues, but neither party presented a convincing position.  However, in conducting its own research on these issues, the Court located yet another regulation, which neither party brought to the Court's attention during oral argument or in the supplemental letter briefs, that is relevant to the Court's inquiry here.

        d.        <u>5 C.F.R. § 731.601 – The Missing Link</u>

The Court refers the parties to another regulatory provision, 5 C.F.R. § 731.601 (1991),[12]

---

[12] 5 C.F.R. § 731.601 is entitled, "Reemployment eligibility of certain former Federal employees."  It states:

which was also in effect when Mr. Sydnor's debarment period expired and which was part of the "old" regulatory scheme that was superceded by the "new" regulations described above. While neither the "old" or the "new" regulations discussed above require OPM to redetermine an applicant's suitability upon the applicant's request, § 731.601, when it was in effect, did just that. The provision entitled "Request for suitability determinations" specifically provides a mechanism through which a former employee may request OPM to determine his or her suitability for further employment. Id. § 731.601(a). This regulation directs OPM to consider a former employee's request for a suitability determination only if the employee has met certain procedural requirements, such as completing any probationary period and fulfilling basic eligibility requirements. Id. The provision entitled "Action by OPM" provides that OPM, "after appropriate consideration, including any investigation OPM deems necessary, shall inform the

_____

(a) *Request for suitability determination*. When an employee has been removed by an agency on charges (other than security or loyalty) or has resigned on learning the agency planned to prefer charges, or while charges were pending, the former employee may request OPM to determine his or her suitability for further employment in the competitive service. OPM shall consider the request only if the former employee:
    (1) Has completed any required probationary period;
    (2) Has basic eligibility for reinstatement; and
    (3) Includes a sworn statement with the request which sets forth fully and in detail the facts surrounding the removal or resignation.

(b) *Action by OPM*. (1) OPM, after appropriate consideration, including any investigation OPM deems necessary, shall inform the former employee of his or her current suitability for employment in the competitive service.
    (2) If the former employee is found unsuitable and has had an opportunity to comment on the reasons for this finding, or has furnished comments to OPM, then OPM may cancel his or her reinstatement eligibility if that eligibility was obtained through fraud. In addition, OPM may prescribe a period of debarment from the competitive service not to exceed 3 years from the date of determination of unsuitability.

5 C.F.R. § 731.601 (1991).

former employee of his or her current suitability for employment in the competitive service." Id. § 731.601(b)(1).

To summarize briefly, Mr. Sydnor's period of debarment ended on January 13, 2001.  At this time, the "old" regulations were in effect and included a mechanism permitting a former employee in Mr. Sydnor's position to request OPM to determination his suitability for further federal employment.  Id. § 731.601(a).   If Mr. Sydnor requested OPM to determine his suitability and if he fulfilled the procedural requirements set forth in § 731.601(a), OPM was required to determine his suitability and to "inform [him] of his . . . current suitability for employment in the competitive service.  Id. § 731.601(b)(1).  Further, the "old" regulation stated that a former employee in Mr. Sydnor's position could not be appointed to a competitive service position until OPM  made a redetermination of his suitability for employment.  See 5 C.F.R. § 731.304 (1998).  On March 30, 2001, less than two months after Mr. Sydnor's debarment period ended, the "new" regulation became effective and provided that "[o]n expiration of a period of debarment, OPM or an agency may redetermine a person's suitability for appointment in accordance with the procedures of this part."  5 C.F.R. § 731.204(b) (2001).  At all times referenced herein, the original disputed regulation was, and still is, in effect, which stated that an agency may reinstate a former ALJ "only after they have established their eligibility in accordance with all current [OPM] examination requirements," and that "[r]einstatement is subject to investigation by, and the prior approval of, OPM."  5 C.F.R. § 930.207 (1991).

As the Court stated above, Mr. Sydnor will eventually have to prove that (1) OPM was required to make a suitability determination of an individual upon that individual's request, (2) he has in fact requested OPM to conduct a suitability determination, (3) OPM refused his

16

request; and (4) OPM's refusal was a final agency action "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  In this case, there was a regulation in place when Mr. Sydnor's debarment period ended that would have required OPM to conduct a suitability determination upon Mr. Sydnor's request as long as certain procedural requirements were met.  See 5 C.F.R. § 731.601 (1991).  Mr. Sydnor has not pleaded evidence to show that he in fact requested OPM to determine his suitability while the "old" regulations were still effective, that he followed the procedural requirements discussed above or that OPM improperly refused his timely request. However, under the notice pleading scheme of the federal procedural rules, he is not obliged to bring forth his evidence at this stage.  To survive a motion to dismiss under Rule 12(b)(6), Mr. Sydnor's Complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Thomas v. Independence Twp., 463 F.3d 285, 295 (3d Cir. 2006) (quoting Fed. R. Civ. P. 8(a)).[13]  Mr. Sydnor deserves the opportunity to develop a factual record in this case in order to attempt to establish the necessary elements of his claim.[14]

Although OPM may eventually prevail once a full and complete record is established, the Court cannot say with assurance that the allegations of Mr. Sydnor's pro se Complaint, which the

---

[13] In Thomas, the Court of Appeals reiterated that "[u]nder a simplified notice pleading standard, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Thomas, 463 F.3d at 295 (quoting Fed. R. Civ. P. 8(a).  The Court of Appeals followed the Supreme Court's acknowledgment that the Federal Rules "'do not require a claimant to set out in detail the facts upon which he bases his claim.'" Id. (citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957))). Rather, the complaint must only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (quoting Conley, 355 U.S. at 47).

[14] The new regulatory scheme specifically provided that no provision of the new regulations "shall be applied in such a way as to affect any administrative proceeding pending on January 29, 2001." 5 C.F.R. § 732.601 (2001).

17

Court holds to less stringent standards than formal pleadings drafted by lawyers, it is not "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 520-521 (U.S. 1972) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957). For the reasons stated above, the Government's Motion to Dismiss with respect to the fourth count of Mr. Sydnor's Complaint will be denied.[15]

---

[15] Given that this case will proceed at least for a time, it is worth noting that from an applicant's perspective, OPM's governing regulations, the requirements those regulations encompass, the intersecting responsibilities of the various agencies, and the interaction and communication between SSA and OPM are confusing, often contradictory and certainly frustrating. Words such as "appoint" and "reinstate," "eligible" and "suitable," which in every day parlance may retain their usual meaning, often have a specific definition when they are applied within the bureaucratic context. The attempt to distinguish similar yet distinct terms as applied to employment in the federal government is not a novel endeavor for federal courts. In 1803 in Marbury v. Madison, Chief Justice Marshall went through great lengths to distinguish the acts of "commission" and "appointment" as applied to various individuals' employment as justices of the peace in the District of Columbia. 5 U.S. (1 Cranch) 137, 155-57 (1803).

With respect to this case, the Government notes that, for example, within the federal employment system an individual is not "hired" for a job but is "appointed" to a position. See Def.'s Supplemental Letter Br. 2. An "appointment" to federal service occurs when "the last act, required from the person possessing the power, has been performed." Marbury, 5 U.S. (1 Cranch) at 157. The "last act" may include execution of applicable forms by an authorized official or by the appointee taking an oath of office. See Def.'s Supplemental Letter Br. 2 (citing Watts v. OPM, 814 F.2d 1576, 1580 (Fed. Cir. 1987); Horner v. Acosta, 803 F.2d 687, 693 (Fed. Cir. 1986); 5 U.S.C. § 2105; 5 C.F.R. § 300.703). "Reinstatement," on the other hand, retains its common meaning in this context, i.e., restoring a former employee into the federal workforce.

"Eligibility" is defined by regulation as an applicant's satisfying "all current examination requirements of OPM Examination Announcement No. 318." 5 C.F.R. § 930.207. "Suitability," or rather the criteria that OPM will use to determine whether an applicant is "suitable" for federal employment, also is defined by regulation. The pertinent regulation provides enumerated factors that OPM must consider in making its suitability determinations, and also provides various "additional considerations" that an agency must utilize when such considerations are pertinent to each individual case. See 5 C.F.R. § 731.202. In sum, a former employee who establishes himself as "eligible" for a federal position may then be "reinstated," but such reinstatement is subject to being determined "suitable" for federal employment. Only after the "last act" has been performed, is the employee's "appointment" official.

B.      *Mr. Sydnor's Claim Under the Privacy Act*[16]

_____

During oral argument on the Government's motion, Mr. Sydnor expressed his understanding that even though he may have established himself as "eligible" for employment, each employing agency (and not OPM) exercises its own discretion in hiring ALJs.  In other words, "eligibility" does not guarantee a job offer.  Mr. Sydnor further acknowledged that if OPM were to determine his suitability for employment, and determine that he is in fact "suitable," "suitability" does not guarantee him a job offer.  Further, OPM may determine that Mr. Sydnor is not suitable.  However, Mr. Sydnor claims that if OPM were to determine that he is suitable for federal employment, this determination would remove the "cloud" on his employment record.

OPM has gone to great lengths to argue why, in its view, it is not *required* to conduct a suitability determination with respect to Mr. Sydnor, but OPM has not credibly argued why it consistently refuses to grant Mr. Sydnor this request.  As a practical matter, the Court appreciates OPM's argument that it only possesses the resources to determine whether an applicant is suitable until and after an employing agency has indicated a willingness to hire the applicant.  However, in specific cases it does not seem unreasonable for the judgment to be exercised to make an exception.

In this case, Mr. Sydnor has been seeking reinstatement as an ALJ for more than six years.  During oral argument, Mr. Sydnor expressed his concerns that he was caught in a "Catch-22" situation because, according to Mr. Sydnor, SSA claims that it cannot reinstate him until OPM determines that he is "suitable," while OPM will not perform a suitability determination until SSA (or another agency) seeks to reinstate him.  The Court's review of the "record" revealed several pieces of correspondence between Mr. Sydnor and each of SSA and OPM that could be interpreted as validating Mr. Sydnor's frustration.  Now that Mr. Sydnor has condensed his claims into a single request that OPM conduct a suitability determination, without any expectation that an offer of employment is imminent if he is determined to be suitable, OPM may well see its way clear to acknowledge that there is no practical reason behind a continued unwillingness to grant his request.

[16]  Mr. Sydnor's Complaint does not contain a single actual reference to the Privacy Act. It does, however, contain the statement that the "[j]urisdiction of this Court is invoked pursuant to . . . 5 C.F.R. Section 297.308."  Compl. ¶ 1.  5 C.F.R. § 297.308 is a regulation promulgated to implement the Privacy Act.  In his Memorandum in Opposition, Mr. Sydnor quotes from a letter he received from OPM, in which OPM advised Mr. Sydnor that he could seek review of OPM's final decision not to amend his personnel records by "filing a civil claim against OPM under 5 U.S.C. [§] 552a(g)(1)" in the "United States district court for the district where you reside."  Pl. Ex. 28 at 28B.  Mr. Sydnor apparently heeded this advice, at least in part, in that he filed the present action in this Court, but the Complaint neglects to mention that Mr. Sydnor brings a claim pursuant to the Privacy Act, 5 U.S.C. § 552a(g)(1).  However, because Mr. Sydnor's Memorandum in Opposition clarifies that he seeks to bring a Privacy Act claim, the Court will

Mr. Sydnor argues that because he was "effectively terminated" as of January 12, 1998, when OPM initially determined that he was unsuitable and debarred him from federal service for three years, it is an error to record his actual termination date as of December 30, 1998, which is when MSPB denied Mr. Sydnor's appeal and SSA officially "removed" him from its rolls as a federal employee.  Pl.'s Mem. Opp'n 7.  Mr. Sydnor argues that OPM should correct this "error in his records."  Pl.'s Mem. Opp'n 7.   In effect, Mr. Sydnor requests the Court to direct OPM to, in turn, direct SSA to change his SF-50 so that January 18, 1998, instead of December 30, 1998, is reflected as his official date of "removal" from federal service.[17]

The Privacy Act permits an individual to request the amendment of any record "pertaining to him," 5 U.S.C. § 552a(d)(1), that he believes is not "accurate, relevant, timely or complete."  Id. § 552a(d)(2)(B)(I).  The judicial review provisions of the Privacy Act provide that when an agency makes a determination under § 552a(d)(3) not to amend an individual's record in accordance with his request, the individual may bring a civil action against the agency in federal district court.  Id. § 552a(g)(1).[18]  See also Douglas v. Agricultural Stabilization and

---

address count two of Mr. Sydnor's Complaint as such.

[17] Mr. Sydnor argues that if his official "removal" date is changed to January 18, 1998, he would be eligible to be reinstated on federal disability retirement because his term of federal employment as an ALJ would have been less than one year.

[18] This section states, in pertinent part, that:

(1) Whenever any agency –
    (A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection . . .

. . .

20

Conservation Service, 33 F.3d 784, 785 (7th Cir. 1994).

While the Privacy Act permits an individual to contest the accuracy of administrative records, the Act "supposes that there is a distinction between 'records' and 'decisions,'" and does not authorize relitigation of the substance of agency *decisions*.[19]  Id.  The regulations

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1).   Subsection (d)(3) states that each agency that maintains a system of records shall:

permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal, and not later than 30 days (excluding Saturdays, Sundays, and legal public holidays) from the date on which the individual requests such review, complete such review and make a final determination unless, for good cause shown, the head of the agency extends such 30-day period; and if, after his review, the reviewing official also refuses to amend the record in accordance with the request, permit the individual to file with the agency a concise statement setting forth the reasons for his disagreement with the refusal of the agency, and notify the individual of the provisions for judicial review of the reviewing official's determination under subsection (g)(1)(A) of this section.

5 U.S.C. § 552a(d)(3).

[19] Numerous other courts have also held that a Privacy Act claim cannot be used to challenge an underlying agency action as opposed to an error in agency recordkeeping. In Sweeney v. Chertoff, 178 Fed. Appx. 354, 358 (5th Cir. 2006) (unpublished), the appellate court affirmed the district court's holding that the plaintiff failed to show "causation" in asserting a Privacy Act claim.  The court noted parenthetically that the Privacy Act is not the proper channel by which to challenge internal agency disciplinary processes with which one disagrees. The court stated that nothing in the Privacy Act permits a reviewing court to "address, much less correct" an adverse agency determination. Similarly, in Reinbold v. Evers, 187 F.3d 348, 360 (4th Cir. 1999), the court held in a record-correction case, citing Douglas, that "the Privacy Act does not allow a court to alter records that accurately reflect an administrative decision, nor the opinions behind that administrative decision, no matter how contestable the conclusions may be" (citing Douglas, 33 F.3d at 785).  See also Phillips v. Widnall, 1997 U.S. App. LEXIS 7155, at *10 (10th Cir. Apr. 14, 1997) (unpublished) (holding, in a record-correction case, that the Privacy Act does not permit a court to alter documents that accurately reflect an agency decision); Santucci v. U.S. Dep't of State, 2005 U.S. Dist. LEXIS 29028, at *14-15 (D. Ariz. Nov. 21, 2005) (holding

promulgated to implement the Privacy Act state:

> (a) The amendment procedures are not intended to allow a challenge to material that records an event that actually occurred nor are they designed to permit a collateral attack upon that which has been or could have been the subject of a judicial, quasi-judicial, or administrative proceeding. The amendment procedures are also not designed to change opinions in records pertaining to the individual.

> (b) The amendment procedures apply to situations when an occurrence that is documented was challenged through an established judicial, quasi-judicial, or administrative procedure and found to be inaccurately described; when the document is not identical to the individual's copy; or when the document is not created in accordance with the applicable recordkeeping requirements. (For example, the amendment provisions are not designed to allow a challenge to the merits of an agency adverse action that is documented in an individual's Official Personnel Folder.)

5 C.F.R. § 297.303.

The Court finds that the Government's Motion to Dismiss with respect to Mr. Sydnor's Privacy Act claim must be granted as a matter of law. Despite his protestations to the contrary, Mr. Sydnor is not merely seeking to correct a ministerial error in his personnel records. Instead, Mr. Sydnor is attempting to argue that SSA's determination as to which date he should have been officially separated from federal service was flawed. Because Mr. Sydnor is essentially attempting to challenge the merits of SSA's underlying employment decision, his claim is not

---

that plaintiffs' attempt to use the Privacy Act to have the court order defendant to amend its records to reflect that plaintiffs are no longer U.S. citizens and that plaintiffs are stateless persons must fail because these are not factual errors that can be corrected by the Privacy Act); Rogers v. U.S. Dep't of Labor, 607 F. Supp. 697, 699 (N.D. Cal. 1985) (stating that while the Privacy Act allows for the amendment of factual or historical errors, it is not "a vehicle for amending the judgments of federal officials or of other parties as those judgments are reflected in records maintained by federal agencies"; further, the court noted that the Privacy Act may not be employed as a skeleton key for reopening consideration of unfavorable federal agency decisions (citing Blevins v. Plummer, 613 F.2d 767, 768 (9th Cir. 1980)).

actionable under the Privacy Act.[20]

Mr. Sydnor obviously disputes the fairness of the designation of December 30, 1998 as his official "removal" date, inasmuch as that date came after a lengthy appeal process that concluded almost 11 months after Mr. Sydnor was effectively terminated from his ALJ position. Mr. Sydnor argues that he is being penalized for exercising his right to appeal OPM's decision, i.e., had he not appealed, he would not have been on SSA's official "roll" in excess of one year and, therefore, would be eligible for federal disability retirement.[21]  In the Privacy Act context, however, the Court is not permitted to consider the "fairness" of the administrative rules that

---

[20]   During Mr. Sydnor's appeal of OPM's decision denying his request to amend his records, OPM explained to Mr. Sydnor that its review was limited to "determining whether your records accurately document your employing agency's [SSA's] personnel actions and whether the records were created in accordance with proper recordkeeping requirements."  Def. Ex. O. Therefore, Mr Sydnor was on notice that the Privacy Act's amendment procedures are not intended to permit a collateral attack on the proceedings that led to the appeal, nor are they designed to permit a challenge on the merits of an agency adjudication.  Def. Ex. P.  Pursuant to its limited scope of review, therefore, OPM determined that Mr. Sydnor's records did, in fact, reflect the various personnel actions relating to Mr. Sydnor's suspension, removal, and debarment and that the records were processed properly.  Def. Exs. O, P.

[21] During the appeal process, OPM informed Mr. Sydnor that if an individual exercises his right to appeal an OPM decision, the employing agency is "required to keep those employee [sic] on its rolls throughout the appeal process."  Def. Ex. O.  Since Mr. Sydnor chose to appeal OPM's initial decision, SSA did not remove Mr. Sydnor from its rolls until the appeal process was concluded, i.e., when MSPB issued its final decision on December 30, 1998.

OPM also informed Mr. Sydnor that "removal" and "debarment" are "separate actions with distinct consequences."  Def. Ex. P at 2.  OPM explained that "debarment" restricts the individual's eligibility (i.e., precludes the individual from examination for, and appointment to a competitive position) for federal employment for a specified length of time.  Id.  In contrast, "removal" by an employing agency terminates that employee's status as an employee of the United States.  Id.  OPM concluded that "there is no basis in law to your argument that when an employee is ordered removed from federal service, and is also debarred from examination and appointment, the removal must occur on the date of the debarment."  Id.  In other words, OPM suggests that there is nothing inconsistent with officially "debarring" an employee as of one (earlier) date and officially "removing" an employee as of another (later) date.

permit an agency to keep an individual on its rolls throughout the administrative appeals process. Furthermore, Mr. Sydnor has presented neither any arguments nor any evidence in an effort to prove that SSA was not entitled to choose the latter date.  Mr. Sydnor argues simply that SSA "subjectively, arbitrarily and inconsistently chose" a separation date that disadvantaged him. Pl.'s Mem. Opp'n 7.  Because Mr. Sydnor's claim addresses the merits of an agency action, and does not merely seek to correct an error in recordkeeping, the Government's Motion to Dismiss will be granted with prejudice with respect to this claim.

CONCLUSION

For the reasons discussed above, the Government's Motion to Dismiss will be granted in part and denied in part.  An appropriate Order follows.

S/Gene E.K. Pratter
Gene E.K. Pratter
United States District Judge

January 22, 2007

24

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| REGINALD SYDNOR, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| OFFICE OF PERSONNEL | : | |
| MANAGEMENT, | : | |
| Defendant | : | NO. 06-0014 |

## O R D E R

AND NOW, this 22nd day of January, 2007, upon consideration of Defendant Office of Personnel Management's Motion to Dismiss, or in the alternative, for Summary Judgment (Docket No. 9), pro se Plaintiff Reginald Sydnor's Memorandum in Opposition (Docket No. 12), and Supplemental Submissions (Docket No. 13), the Defendant's Reply Brief (Docket No. 14), and the parties' undocketed supplemental letter briefs, it is **ORDERED** that Defendant's Motion to Dismiss (Docket No. 9) is **GRANTED IN PART** and **DENIED IN PART**.  It is **FURTHER ORDERED** that:

1. Counts One (1) and Three (3) and remedies One through Four (1-4) of Plaintiff's Complaint are **DISMISSED** with prejudice;

2. Count Two (2) of Plaintiff's Complaint is **DISMISSED** with prejudice; and

3. Defendant shall have twenty (20) days from the date of entry of this Order to file and serve an answer to Plaintiff's Complaint with respect to Count Four (4) only.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge