IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **REGINALD L. SYDNOR,** | : | CIVIL ACTION |
|         **Pro Se Plaintiff,** | : | |
| | : | |
|    **vs.** | : | |
| | : | |
| **OFFICE OF PERSONNEL** | : | |
| **MANAGEMENT** | : | |
|         **Defendant.** | : | No. 06-0014 |

**M E M O R A N D U M   A N D   O R D E R**

PRATTER, J.                                                                                                                              MAY 7, 2008

**INTRODUCTION**

      In January 2006, Mr. Sydnor filed a four-count Complaint endeavoring to allege, inter alia, a cause of action under the Administrative Procedures Act, 5 U.S.C. § 701 et seq. ("APA"). This action stems from the Office of Personnel Management's ("OPM") determination a decade ago that Mr. Sydnor was unsuitable for federal employment, and subsequent decisions terminating him from his position as an Administrative Law Judge for the Social Security Administration, and debarring him from federal employment for a period of three years.

      OPM moved to dismiss all of Mr. Sydnor's claims, and on January 22, 2007, the Court granted OPM's motion in part and denied it part. Sydnor v. OPM, No. 06-0014, 2007 U.S. Dist. LEXIS 4586 (E.D. Pa. Jan. 22, 2007).[1]  The Court dismissed Mr. Sydnor's Complaint in its entirety except for Count Four, which encompassed Mr. Sydnor's APA claim. Based on the allegations in his Complaint, the Court concluded that Mr. Sydnor had stated a claim under the

---

[1] OPM's motion was styled as a motion to dismiss, or, in the alternative, for summary judgment. The Court determined that summary judgment was not appropriate at that time and, accordingly, decided the motion as one to dismiss. Sydnor, 2007 U.S. Dist. LEXIS 4586, at *10-11.

APA sufficient to survive a motion to dismiss.

Without seeking the Court's leave to amend his Complaint, on January 30, 2007, Mr. Sydnor filed an Amended Complaint alleging two additional claims as Counts Five and Six. Thereafter, OPM moved for summary judgment with respect to Counts Five and Six, and on July 11, 2007, the Court granted OPM's motion as to both of these claims. Sydnor v. OPM, No. 06-0014, 2007 U.S. Dist. LEXIS 49931 (E.D. Pa. July 11, 2007).[2]  Count Four – Mr. Sydnor's APA claim – once again was Mr. Sydnor's only remaining claim.

Then, on December 12, 2007, almost two years after he initiated this action, Mr. Sydnor sought the Court's leave to further amend his Amended Complaint. Mr. Sydnor does not seek to assert any additional claims. Instead, he wants to add two remedies, namely, back pay under 5 U.S.C. § 5596, and declaratory relief under 28 U.S.C. §§ 2201 and 2202. In addition, Mr. Sydnor seeks to join the Social Security Administration as a "necessary" party pursuant to Rule 19 of the Federal Rules of Civil Procedure.

On January 28, 2008, before the Court ruled on Mr. Sydnor's motion to amend, OPM once again moved for summary judgment with respect to Mr. Sydnor's APA claim. OPM filed with the Court the complete administrative record of Mr. Sydnor's debarment proceedings.[3]  Mr.

---

[2] OPM's second motion was also styled as a motion to dismiss, or, in the alternative, for summary judgment. With respect to the two additional claims that Mr. Sydnor alleged, which were the subject of the defense motion, the Court determined that summary judgment was appropriate.

[3] In a typical APA case, the reviewing court examines the "administrative record" of the "agency action" challenged by the complaining party. The applicable federal agency will submit to the reviewing court a complete administrative record of the agency action, and the court's review will encompass only that record. See 5 U.S.C. § 706. As explained below, in this case, Mr. Sydnor is challenging agency "inaction," which, he claims, violated the APA. In other words, Mr. Sydnor is not challenging a particular legislative or adjudicative action for which the

Sydnor opposes OPM's motion, and also submitted his own motion for summary judgment.

For the reasons discussed below, OPM's motion for summary judgment will be granted, and Mr. Sydnor's motion for summary judgment will be denied. In addition, Mr. Sydnor's motion to further amend his Amended Complaint will be denied.

**FACTUAL BACKGROUND**

The following facts are undisputed.[4]

On March 2, 1997, Mr. Sydnor was appointed to the position of Administrative Law Judge ("ALJ") with the Social Security Administration ("SSA"). (A.R. at OPM00321.) On August 19, 1997, OPM's Investigative Services sent a letter to Mr. Sydnor informing him that, at the request of SSA, OPM had conducted a background investigation and that the results "raise a serious question as to your current suitability for competitive Federal employment." (A.R. at OPM00321.) On September 2, 1997, SSA relieved Mr. Sydnor of his ALJ duties and placed him on administrative leave with pay. (A.R. at OPM00523.)

In its investigation, OPM found that Mr. Sydnor had intentionally falsified information in

---

applicable agency, here, OPM, would have maintained an official record. In this case, OPM submitted a record of Mr. Sydnor's 1998 debarment proceedings, his subsequent appeals, and correspondence between Mr. Sydnor and OPM and other federal agencies.

[4] OPM followed the Court's procedures and submitted a numbered, paragraph-by-paragraph recitation of facts, with citations to the record, to support its argument. Mr. Sydnor did not comply with the Court's procedures in that he did not state in similar paragraph form whether he agreed or disagreed that the facts as stated by the OPM were undisputed. He merely noted that he conceded facts as presented in certain of OPM's numbered paragraphs, and disputed others. He also contended that certain of OPM's numbered paragraphs were irrelevant or immaterial to the resolution of Count Four of his Amended Complaint. However, the facts presented below, which largely mirror OPM's presentation of facts in its motion for summary judgment, are consistent with the allegations presented in Mr. Sydnor's Amended Complaint, the statement of facts he presented in his own motion for summary judgment, and are supported by the numerous documents contained in the administrative record in this case.

his ALJ application and related forms. (A.R. at OPM00495.) Specifically, OPM determined that Mr. Sydnor had provided "inaccurate information about the reason for [his] separation [from the Equal Employment Opportunity Commission where he worked from September 18, 1978 through August 20, 1993], show[ed] an incorrect supervisor, and omitted any reference to [his] compensation claim or disability retirement." (A.R. at OPM00502.)[5] Consequently, on January 13, 1998, after considering Mr. Sydnor's response to the charges against him, OPM issued a negative suitability letter to Mr. Sydnor which, among other things, debarred Mr. Sydnor from federal employment for three years. (A.R. at OPM00494-OPM00506.)

On February 11, 1998, Plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB") to challenge his debarment. (A.R. at OPM00528.) After Mr. Sydnor appealed his debarment to the MSPB, SSA placed him on indefinite suspension without pay. (A.R. at OPM00523.)[6] On June 11, 1998, the MSPB affirmed OPM's negative suitability determination, including OPM's decision to debar Mr. Sydnor from federal employment for a period of three years. (A.R. at OPM00528-OPM00549.) On December 30, 1998, the MSPB denied Mr. Sydnor's petition for review and dismissed his case against OPM. (A.R. at OPM00556.) The SSA removed Mr. Sydnor from its rolls, i.e., formally terminated his employment, effective

---

[5] OPM dropped two other charges – negligence or misconduct in prior employment and criminal, dishonest conduct – due to insufficient evidence. (A.R. at OPM00494.)

[6] In addition, on March 3, 1998, Mr. Sydnor filed an appeal with the MSPB challenging his indefinite suspension without pay. (A.R. at OPM00523-OPM00527.) On June 3, 1998, the MSPB dismissed Mr. Sydnor 's appeal of his suspension by the SSA for lack of jurisdiction. (A.R. at OPM00523-OPM00527.) Mr. Sydnor appealed the MSPB's decision, and on December 30, 1998, the MSPB denied Mr. Sydnor's petition for review and dismissed his appeal. (A.R. at OPM00556.)

December 30, 1998. (A.R. at OPM00557.)[7]

Mr. Sydnor's debarment from federal service terminated on January 13, 2001. (A.R. at OPM00494.) Mr. Sydnor never requested a suitability determination from OPM pursuant to 5 C.F.R. § 731.601. Mr. Sydnor never requested that OPM perform a suitability determination between January 13, 2001, the time that his debarment ended, and March 30, 2001, the date that the new regulations went into effect and 5 C.F.R. § 731.601 was eliminated. Mr. Sydnor never submitted to OPM a sworn statement that set forth fully and in detail the facts surrounding his removal for a suitability determination.

**LEGAL STANDARD**

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact

---

[7] In 1999, Mr. Sydnor appealed his claim against OPM (and his claim against SSA) to the U.S. District Court for the District of Maryland. Mr. Sydnor challenged the SSA's action in placing him on administrative leave and later on indefinite suspension, the information that OPM used to support its final determination that Plaintiff had falsified documents, and certain procedural defects in the MSPB's actions. Mr. Sydnor alleged, among other things, that the SSA's actions were based on racial discrimination in violation of Title VII of the Civil Rights Act of 1964, and that OPM's actions violated the Rehabilitation Act of 1972. Mr. Sydnor further asserted in the district court that the actions of both OPM and the SSA were: (a) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law or fact; (b) obtained without procedures required by law, rule, or regulation having been followed; and © unsupported by substantial evidence.

On October 25, 1999, the district court dismissed Mr. Sydnor's claims. Mr. Sydnor appealed, and the U.S. Court of Appeals for the Fourth Circuit affirmed the district court decision. The Supreme Court denied Mr. Sydnor's petition for a writ of certiorari.

that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it could affect the result of the suit under governing law. Id.

Evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 217, 322 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record. Celotex, 477 U.S. at 322-23. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 642 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

On cross motions for summary judgment, the same standards and burdens apply. See Applemans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987); Peters Twp. School Dist. v. Hartford Accident and Indem. Co., 833 F.2d 32, 34 (3d Cir. 1987). Cross motions for summary

judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waived judicial consideration and determination whether genuine issues of material face exist.

Transportes Ferreos de Venezuela II Ca v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001) (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). Of course, when presented with cross motions for summary judgment, the Court must consider the motions separately. See Williams v. Phila. Hous. Auth., 834 F. Supp. 794, 797 (E.D. Pa. 1993), aff'd, 27 F.3d 560 (3d Cir. 1994).

**DISCUSSION**

**I.  THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Mr. Sydnor's sole claim is brought pursuant to the APA. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. In order to state a claim under the APA, Mr. Sydnor must challenge an "agency action," since it is only review "thereof" that the APA permits. Where no other statute provides a private right of action, the "agency action" challenged must be the "final agency action." 5 U.S.C. § 704 (emphasis added).[8]

---

[8] The Court's review of Mr. Sydnor's APA claim is limited to a review of the administrative record of Mr. Sydnor's debarment proceedings, his administrative appeals, and his subsequent attempts to reinstate his employment with the SSA. The parties dispute whether the Court is restricted to a review of the administrative record in evaluating Mr. Sydnor's APA claim, and what constitutes a complete and appropriate "record." OPM asserts that in an action under the APA, the reviewing court only reviews the administrative record of the pertinent administrative agency decision, subject to certain exceptions which are not applicable here. In

In response to OPM's first motion to dismiss, Mr. Sydnor described his APA claim as follows: "whether OPM violated its own regulations by failing to make a suitability determination with respect to his reinstatement to federal employment after his debarment period expired in January 2001." Sydnor, 2007 U.S. Dist. LEXIS 4586, at *P 6-7 (quoting Pl. Mem. Opp'n to Def. Mot. Dismiss 5). Liberally construing Mr. Sydnor's Complaint, the Court found that the only potential "agency action" at issue actually referred to OPM's alleged "inaction," namely, its alleged failure to make a suitability determination and reinstate him to federal employment after his three-year disbarment from federal employment had expired. The discrete

---

that regard, OPM filed with the Court an administrative record of Mr. Sydnor's debarment proceedings. Mr. Sydnor counters that the administrative record submitted by OPM is incomplete, and must be supplemented with certain additional material facts contained in a declaration that he filed along with his motion for summary judgment. In that regard, Mr. Sydnor submitted the following additional materials: a 1979 MSPB decision in an unrelated case, addressing claims of an ALJ employed by the SSA; Mr. Sydnor's personal telephone records; a list, compiled by Mr. Sydnor, of the federal positions for which he has applied; and Mr. Sydnor's handwritten caller ID log and voice record notes.

     The APA explicitly directs a reviewing court to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Thus, "[i]n a challenge to administrative action under the APA, the administrative record cannot normally be supplemented." NVE Inc. v. HHS, 436 F.3d 182, 189 (3d Cir. 2006) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973) ("In applying [the arbitrary and capricious] standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); Horizons Int'l, Inc. v. Baldrige, 811 F.2d 154, 162 (3d Cir. 1987) (describing review of the existing administrative record as one of "the traditional limits of judicial review applied under section 10 of the APA")). In noting that there is a "strong presumption against discovery into administrative proceedings born out of the objective of preserving the integrity and independence of the administrative process," the Court of Appeals for the Third Circuit has carved out an exception to the general rule prohibiting discovery in cases involving alleged agency bias. NVE Inc., 436 F.3d at 195 (citing Grant v. Shalala, 989 F.2d 1332, 1344 (3d Cir. 1993); Hummel v. Heckler, 736 F.2d 91 (3d Cir. 1984)). If agency bias is alleged, courts have permitted the administrative record to be supplemented on that issue. However, Mr. Sydnor does not contend that "bias" is an issue here. Moreover, the documents Mr. Sydnor submitted, described above, to "supplement" the administrative record, are inappropriate even if agency bias was at issue. Therefore, the Court must consider only the administrative record filed by OPM.

issue presented for the Court's resolution now is whether OPM failed to make a suitability determination in violation of its own regulations.

In order to state a claim for "agency inaction" under the APA, a plaintiff must assert "that an agency failed to take a <u>discrete</u> agency action that it is <u>required to take</u>." <u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55, 64 (2004). In its January 22, 2007 Memorandum, the Court reviewed the potential regulations at issue, some of which the parties did not bring to the Court's attention, in light of Mr. Sydnor's allegations, and concluded that in order to succeed on his APA claim, Mr. Sydnor must establish that (1) OPM was or is required to make a suitability determination of an individual upon that individual's request, (2) Mr. Sydnor actually requested OPM to conduct a suitability determination, (3) OPM refused his request; and (4) OPM's refusal was a final agency action "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). See <u>Sydnor</u>, 2007 U.S. Dist. LEXIS 4586, at *18-30.

OPM now argues that Mr. Sydnor never requested that OPM conduct a suitability determination (prior to filing this lawsuit) and, accordingly, that OPM never refused any such request. OPM argues that there is no "final agency action" at issue here, and, therefore, Mr. Sydnor's APA claim must fail. For the reasons discussed below, the Court agrees.

None of the regulations that Mr. Sydnor relied upon, when he first asserted his APA claim, <u>required</u> OPM to conduct a suitability determination upon an applicant's request. Without the input of the parties, the Court considered a regulation, 5 C.F.R. § 731.601 (1991),[9] that, for a

---

[9] 5 C.F.R. § 731.601 is entitled, "Reemployment eligibility of certain former Federal employees." It states:
(a) Request for suitability determination. When an employee has been removed by an agency on charges (other than security or loyalty) or has resigned on learning the agency planned to prefer charges, or while charges were pending, the former employee may

9

period of less than three months following the date Mr. Sydnor's debarment concluded on January 13, 2001, would have required OPM to redetermine Mr. Sydnor's suitability for federal employment, upon his request, as long as Mr. Sydnor met certain conditions.  Section 731.601(a) stated that "OPM shall consider the request only if the former employee: (1) Has completed any required probationary period; (2) Has basic eligibility for reinstatement; and (3) Includes a sworn statement with the request which sets forth fully and in detail the facts surrounding the removal or resignation."  § 731.601(a).  However, Mr. Sydnor concedes that he did not request a suitability determination from OPM pursuant to 5 C.F.R. § 731.601.  (See Pl. Resp. & Mot. Summ. J. 7.)[10]  Because Mr. Sydnor did not properly request OPM to redetermine his eligibility pursuant to 5 C.F.R. § 731.601, while that regulation was effective, OPM was not required to

---

> request OPM to determine his or her suitability for further employment in the competitive service. OPM shall consider the request only if the former employee:
>> (1) Has completed any required probationary period;
>> (2) Has basic eligibility for reinstatement; and
>> (3) Includes a sworn statement with the request which sets forth fully and in detail the facts surrounding the removal or resignation.
>
> (b) Action by OPM. (1) OPM, after appropriate consideration, including any investigation OPM deems necessary, shall inform the former employee of his or her current suitability for employment in the competitive service.
>
> (2) If the former employee is found unsuitable and has had an opportunity to comment on the reasons for this finding, or has furnished comments to OPM, then OPM may cancel his or her reinstatement eligibility if that eligibility was obtained through fraud. In addition, OPM may prescribe a period of debarment from the competitive service not to exceed 3 years from the date of determination of unsuitability.

5 C.F.R. § 731.601 (1991).

[10] It is unclear whether, in the two and a half months after January 13, 2001, Mr. Sydnor complied with the first two requirements listed in § 731.601(a) .  However, Mr. Sydnor concedes that he did not comply with the third requirement, i.e, he admitted that he failed to submit to OPM "a sworn statement with the request which sets forth fully and in detail the facts surrounding the removal or resignation."  (See Pl. Resp. & Mot. Summ. J. 7.)

redetermine his eligibility pursuant to § 731.601 at that time. Therefore, absent another regulation requiring OPM to redetermine Mr. Sydnor's suitability for federal employment, OPM cannot be held liable under the APA for "fail[ing] to take a <u>discrete</u> agency action that it [was] <u>required to take</u>." <u>Norton</u>, 542 U.S. at 64. Mr. Sydnor has not referred the Court to any such regulation. <u>See also</u> <u>Sydnor</u>, 2007 U.S. Dist. LEXIS 4586, at *18-30.

On March 31, 2001, just over two months after Mr. Sydnor's debarment ended, new regulations became effective which superceded § 731.601. The "new" regulations, 5 C.F.R. Part 731 (2001), eliminated the provisions in § 731.601 governing suitability determinations, and, instead, provided that "[o]n expiration of a period of debarment, OPM or an agency <u>may</u> <u>redetermine</u> a person's suitability for appointment in accordance with the procedures of this part." 5 C.F.R. § 731.204(b) (2001) (emphasis added). While § 731.601(a) provided that OPM "shall" determine a former employee's suitability for federal employment, indicating that OPM was required to comply with an employee's request as long as the employee met certain requirements, § 731.204(b) revised these regulations to vest discretion with OPM (or another administrative agency) to determine whether to "redetermine a person's suitability" for federal employment. To the extent that Mr. Sydnor claims that he requested OPM to redetermine his suitability for federal employment under § 731.204(b), and OPM improperly refused, Mr. Sydnor cannot state a claim under the APA because he has failed to identify an "agency action" or "inaction," and has not established that OPM failed "to take a <u>discrete</u> agency action that it [was] <u>required to take</u>." <u>Norton</u>, 542 U.S. at 64. Accordingly, Mr. Sydnor's APA claim must fail as a matter of law and OPM's motion for summary judgment will be granted. Mr. Sydnor's motion

for summary judgment will be denied.[11]

---

[11] Mr. Sydnor's motion for summary judgment does not describe any "final agency action" upon which to base an APA claim and generally fails to articulate any intelligible argument warranting summary judgment. For example, he argues that OPM failed to notify him of the procedure for requesting a suitability redetermination delineated in § 731.601, but he fails to refer to any regulation (or other premise) requiring OPM to provide such notice. In addition, Mr. Sydnor contends that OPM violated 5 C.F.R. § 731.304 (1991), which was in effect on the date Mr. Sydnor's debarment period expired but was amended and superceded within a few weeks thereafter. This regulation stated that "[o]n expiration of a period of debarment, a person who has been debarred may not be appointed to any position in the competitive service until OPM has redetermined that person's suitability for appointment." 5 C.F.R. § 731.304 (1991). However, this regulation did not require OPM to redetermine a person's suitability for federal appointment. Rather, it makes OPM's redetermination that a person is suitability for appointment a prerequisite for any appointment following debarment. Moreover, Mr. Sydnor has not established that he requested a suitability determination prior to the date this regulation was superceded.

On March 30, 2001, less than two months after Mr. Sydnor's debarment period ended, 5 C.F.R. § 731.204(b) (2001) became effective, superceding 5 C.F.R. § 731.304 (1991), and provided that "[o]n expiration of a period of debarment, OPM or an agency may redetermine a person's suitability for appointment in accordance with the procedures of this part." 5 C.F.R. § 731.204(b) (2001). In addition, at all times referenced herein, 5 C.F.R. § 930.207 (1991), was, and still is, in effect. This regulation states that an agency may reinstate a former ALJ "only after they have established their eligibility in accordance with all current [OPM] examination requirements," and that "[r]einstatement is subject to investigation by, and the prior approval of, OPM." 5 C.F.R. § 930.207 (1991).

Throughout this litigation, OPM steadfastly has maintained that OPM retains the discretion to evaluate an applicant's suitability for federal employment, and that OPM typically investigates an applicant's suitability only after an administrative agency hires the applicant for a position. This is precisely what occurred in Mr. Sydnor's case when he was first appointed as an ALJ in 1997: the SSA hired him; by regulation, his appointment was subject to an OPM investigation as to his suitability; thereafter, OPM conducted its investigation, found that Mr. Sydnor was unsuitable for federal employment, and subsequently debarred him from federal employment.

There is no dispute that no administrative agency has appointed Mr. Sydnor to a position, or extended Mr. Sydnor an offer of employment at this time. However, in the course of a conference among the Court and the parties on the record before the Court, OPM expressed its willingness to consider circumventing its typical procedures and conducting an investigation of Mr. Sydnor's suitability even though no federal agency had extended him an offer of employment. (Hr'g Tr. 37, Sept. 18, 2007.) At that time Mr. Sydnor decided instead to pursue his claims in this litigation, seeking to recover benefits and back pay retroactive to 2001. (Hr'g Tr. 37, Sept. 18, 2007.)

Throughout the two years Mr. Sydnor has pursued this litigation, he has expressed his

**II.    MR. SYDNOR'S MOTION TO AMEND/CORRECT HIS AMENDED COMPLAINT**

Mr. Sydnor seeks to amend his Amended Complaint to include a remedy for backpay under 5 U.S.C. § 5596, a remedy for declaratory relief under 28 U.S.C. §§ 2201 and 2202, and to join the Social Security Administration as a "necessary" party pursuant to Rule 19 of the Federal Rules of Civil Procedure.

The Court has already determined that Mr. Sydnor's sole remaining claim, Count Four of his Amended Complaint, must fail.  Because he has no viable claims, the Court need not determine whether he is entitled to amend his Amended Complaint to plead any additional remedies for that claim.

In addition, the Court will deny Mr. Sydnor's request to join the SSA as a party to this law suit.  As explained above, Mr. Sydnor's only claim is under the APA.  In his proposed Second Amended Complaint, which is attached as an exhibit to his motion to amend, he does not assert any additional claims, jurisdictional bases for suit, or causes of action of any sort.  Mr. Sydnor does plead certain additional facts, but these facts merely further describe his original

---

frustration in dealing with OPM and the SSA, and his despair from being treated, in his view, differently than any other ALJ under similar circumstances.  Mr. Sydnor clearly wants the SSA to reinstate him as an ALJ, a position that he enjoyed for a period of 6 months, almost 10 years ago, before his employment was terminated.  He appears to believe that "reinstatement" to his former position is (or should be) automatic, contingent only upon meeting certain eligibility requirements (which he claims he has met).  He also appears to believe that, until OPM conducts a suitability determination, he will forever be viewed by the SSA as "unsuitable" for federal employment, based on the fact that he was disciplined and debarred previously.  Until he is determined to be "suitable," he believes, the SSA will not hire him.  However, Mr. Sydnor has conceded multiple times before the Court that he understands that even if OPM were to conduct a suitability investigation, and even if OPM were to find that he was "suitable" for federal employment, that determination does not guarantee Mr. Sydnor any job, much less his sought-after position at SSA.

claim against OPM. As pleaded, Mr. Sydnor's claim is that "Defendant's unsuitability and debarment policy and practice has the cause and effect to expel Plaintiff from Federal employment without any administrative remedy." (Pl. Proposed 2d. Am. Compl. 5.) In his own words, Mr. Sydnor defined his APA claim as whether OPM violated its own regulations by failing to determine his suitability for federal employment. As alleged, and as candidly explained by Mr. Sydnor, this claim does not implicate the SSA.

Mr. Sydnor is now attempting to broaden his claim. Since he commenced this action, Mr. Sydnor has claimed that he is caught in a "catch-22" situation, whereby OPM has informed him that it will not determine his suitability for federal employment until SSA expresses an interest in hiring him, while SSA states that it cannot hire him until OPM determines that he is suitable for federal employment. Mr. Sydnor now claims SSA is a "necessary" party because, in order to resolve this "catch-22," SSA's participation is required. However, Mr. Sydnor has not alleged facts or a recognized legal theory, either in his Amended Complaint or in his proposed Second Amended Complaint that support a cause of action under the APA, or under any other federal statute, against SSA. Accordingly, Mr. Sydnor's motion to amend will be denied.

**CONCLUSION**

For the reasons discussed above, Mr. Sydnor has not established facts that support a claim under the Administrative Procedures Act. OPM correctly argues that Mr. Sydnor has failed to establish that OPM took any "final agency action," or failed to take any such action, that is entitled to judicial review. Accordingly, OPM's motion for summary judgment will be granted, and Mr. Sydnor's motion for summary judgment will be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **REGINALD L. SYDNOR,** | : | CIVIL ACTION |
| **Pro Se Plaintiff,** | : | |
| | : | |
| vs. | : | |
| | : | |
| **OFFICE OF PERSONNEL** | : | |
| **MANAGEMENT** | : | |
| Defendant. | : | No. 06-0014 |

**O R D E R**

**AND NOW**, this 7th day of May, 2008, upon consideration of Mr. Sydnor's Motion to Amend/Correct his Amended Complaint (Docket No. 44), Office of Personnel Management's response (Docket No. 45), Mr. Sydnor's reply (Docket No. 47), Office of Personnel Management's Motion for Summary Judgment (Docket No. 50), Mr. Sydnor's Response to Defendant's Motion for Summary Judgment and Cross Motion for Summary Judgment (Docket No. 55), Office of Personnel Management's reply (Docket No. 56), Mr. Sydnor's surreply (Docket No. 57), Mr. Sydnor's Motion to Amend/Correct his Declaration (Docket No. 58), and Office of Personnel Management's response (Docket No. 60) **IT IS ORDERED** that:

1. Mr. Sydnor's Motion to Amend/Correct his Declaration (Docket No. 58) is **GRANTED**.

2. Office of Personnel Management's Motion for Summary Judgment (Docket No. 50) is **GRANTED**.

3. Mr. Sydnor's Motion for Summary Judgment (Docket No. 55) is **DENIED**.

4. Mr. Sydnor's Motion to Amend/Correct his Amended Complaint (Docket No. 44) is **DENIED**.

5. The Clerk of Court shall **CLOSE** this case for all purposes, including statistics.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge